No. 23-10572-H

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

Amanda Curlee

*Intervenor-Appellant*

v.

AT&T Mobility Services, LLC

*Defendant-Appellee*

Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division

No. 1:18-cv-03730-WMR

---

## APPELLANT'S REPLY BRIEF

---

Joseph M. Sellers
Harini Srinivasan
Phoebe Wolfe
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., N.W.
Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600

Gillian L. Thomas
Jennesa Calvo-Friedman
Ria Tabacco Mar
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500

Cory Isaacson
Andres M. Lopez-Delgado
American Civil Liberties Foundation of
Georgia, Inc.

1100 Spring St., N.W., Suite 640
Atlanta, GA 30357
Tel.: (404) 594-2723

*Attorneys for Appellant*

**No. 23-10572-H**

*Amanda Curlee v. AT&T Mobility Services, LLC*
**INTERVENOR-APPELLANT AMANDA CURLEE'S
CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Intervenor-Appellant Amanda Curlee (the plaintiff-intervenor in *Allen v. AT&T Mobility Services, LLC*, N.D. Ga. Case No. 1:18-cv-03730-WMR) is an individual with no corporate affiliations.

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned hereby discloses the following list of known persons, associated persons, firms, partnerships, and corporations that have an interest in the outcome of this appeal:

1.  Ray, William M., II (United States District Judge for the Northern District of Georgia)

2.  American Civil Liberties Union Foundation of Georgia, Inc. (counsel for Intervenor-Appellant)

3.  American Civil Liberties Union Foundation (counsel for Intervenor-Appellant)

4.  AT&T Inc., (T) (corporate affiliate of AT&T Mobility Services, LLC)

5.  AT&T Mobility Services, LLC (Defendant-Appellee)

6.  AT&T NCWS Holdings, Inc. (corporate owner of New Cingular Wireless Services, Inc.)

7.  AT&T Teleholdings, Inc. (corporate owner of SBC Telecom, Inc.)

8.     BellSouth Mobile Data, Inc. (corporate owner of SBC Telecom, Inc.)

9.     Calvo-Friedman, Jennesa (counsel for Intervenor-Appellant)

10.    Cedar, Christine (counsel for Defendant-Appellee)

11.    Cohen Milstein Sellers & Toll PLLC (counsel for Intervenor Appellant)

12.    Cricket Holdco Inc. (corporate owner of AT&T Mobility Services LLC)

13.    Curlee, Amanda (Intervenor-Appellant)

14.    Gage, Kenneth W. (counsel for Defendant-Appellee)

15.    Isaacson, Cory (counsel for Intervenor-Appellant)

16.    Leap Wireless International, Inc. (corporate owner of Cricket Holdco Inc.)

17.    Lopez-Delgado, Andrés M. (counsel for Intervenor-Appellant)

18.    LWI Holdco (corporate owner of Leap Wireless International, Inc.)

19.    New Cingular Wireless Services, Inc. (corporate owner of LWI Holdco)

20.    Paul Hastings LLP (counsel for Defendant-Appellee)

21.    SBC Telecom, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

22.    Sellers, Joseph M. (counsel for Intervenor-Appellant)

23.    Snipe, Sheldon W. (counsel for Defendant-Appellee)

24.    Srinivasan, Harini (counsel for Intervenor-Appellant)

25.    Tabacco Mar, Ria (counsel for Intervenor-Appellant)

26.    Thomas, Gillian L. (counsel for Intervenor-Appellant)

27.    Wolfe, Phoebe (counsel for Intervenor-Appellant)

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................... 1

ARGUMENT ........................................................................ 2

I.    AT&T MOBILITY DISADVANTAGES PREGNANT WORKERS
      SEEKING EXCUSED ABSENCES. ........................................... 2
      A.    Under the SAG Policy, Pregnant Workers Who Need
            Intermittent Leave Are Disadvantaged. .............................. 3
      B.    Under the SAG Policy, Pregnant Workers Must Overcome
            Procedural Hurdles Not Imposed on Their Non-Pregnant Peers. ........ 5
      C.    Application of the SAG Policy Leads to Pregnant Workers
            Incurring More Unexcused Absences and Escalating Discipline. ....... 7
      D.    Ms. Curlee's Experience Exemplifies the SAG Policy's
            Adverse Application to Pregnant Workers and Shows Why It
            May Appropriately Be Adjudicated on a Classwide Basis. ............ 7

II.   AT&T MOBILITY, LIKE THE DISTRICT COURT,
      MISAPPREHENDS THE LEGAL STANDARDS APPLICABLE TO
      PATTERN-OR-PRACTICE AND DISPARATE IMPACT CLAIMS. ........ 9
      A.    Pattern-or-Practice Claims Do Not Require Individual Liability
            Determinations ..................................................... 9
      B.    Disparate Impact Claims Do Not Require Individual Liability
            Determinations .....................................................11

III.  HAVING MISSTATED TITLE VII CLASSWIDE LIABILITY
      STANDARDS, AT&T MOBILITY, LIKE THE DISTRICT COURT,
      THEN MISAPPLIES THEM TO ITS PREDOMINANCE AND
      SUPERIORITY ANALYSES. ...............................................12
      A.    Individual Remedies Questions Do Not Predominate Over
            Common Liability Questions. ......................................13
      B.    To Defeat Predominance, AT&T Mobility, Like the District
            Court, Erroneously Treats Remedies Questions as if They Were
            Liability Questions.................................................13
            1.    AT&T Mobility Ignores the Liability Requirements for
                  Pattern-or-Practice and Disparate Impact Claims. ...........13

# TABLE OF CONTENTS

Page

2.    The Individualized Questions AT&T Mobility and the
District Court Identify Do Not Bear on Liability in
Pattern-or-Practice or Disparate Impact Cases. ......................17

C.    A Class Action Is Superior to Hundreds of Individual Lawsuits
Bringing Pattern-or-Practice and Disparate Impact Claims. .............18

IV.    THE DISTRICT COURT CORRECTLY FOUND PLAINTIFFS
SATISFIED THE COMMONALITY REQUIREMENT. ..........................22

V.    AT&T MOBILITY, LIKE THE DISTRICT COURT,
MISCHARACTERIZES THE RELEVANT STANDARDS UNDER
RULE 23(C)(4) AND THE ISSUE CLASSES APPELLANT SEEKS
AS ALTERNATIVE GROUNDS FOR CERTIFICATION. ......................25

CONCLUSION ...............................................................27

CERTIFICATE OF COMPLIANCE...............................................29

CERTIFICATE OF SERVICE..................................................30

iv

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir 2003) .........................................................................13

*Ault v. Walt Disney World Co.*,
  692 F.3d 1212 (11th Cir. 2012) ........................................................................25

*Baker v. State Farm Mut. Auto. Ins. Co.*,
  No. 21-14197, 2022 WL 3452469 (11th Cir. 2022) ..................................14, 15

*Baker v. State Farm Mut. Auto. Ins. Co.*,
  No. 4:19-CV-14, 2021 WL 4006124 (M.D. Ga. Sept. 2, 2021) .......................15

*Bennett v. Dart*,
  53 F.4th 419 (7th Cir. 2022) .............................................................................26

*Brown v. Ala. Dep't of Transp.*,
  597 F.3d 1160 (11th Cir. 2010) ........................................................................21

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ........................................................................13

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021) ........................................................................20

*Chin v. Port Auth. of N.Y. & N.J.*,
  685 F.3d 135 (2d Cir. 2012) .......................................................................12, 20

*Cooper v. Fed. Rsrv. Bank of Richmond*,
  467 U.S. 867 (1984) ....................................................................................10, 15

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259, 1267 (11th Cir. 2019) ..............................................................15

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) ..................................................................21, 22

*Dickens v. GC Servs. Ltd. P'ship*,
   706 F. App'x 529 (11th Cir. 2017).................................................25

*EEOC v. Bass Pro Outdoor World, L.L.C.*,
   826 F.3d 791 (5th Cir. 2016).....................................................21

*EEOC v. Joe's Stone Crab, Inc.*,
   220 F.3d 1263 (11th Cir. 2000)....................................................11

*EEOC v. W&O, Inc.*,
   213 F.3d 600 (11th Cir. 2000).....................................................21

*In re Emp. Discrimination Litig. Against State of Ala.*,
   198 F.3d 1305 (11th Cir. 1999)..................................... 11, 12, 17, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)..............................................................9, 13

*Fla. Educ. Ass'n v. Dep't of Educ.*,
   No. 17CV414, 2019 WL 8219403 (N.D. Fla. Jan. 3, 2019)...........................24

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
   No. 96 CV 8414, 2013 WL 4647190 (S.D.N.Y. Aug. 29, 2013) ......................18

*Harris v. Nortek Global HVAC LLC*,
   No. 14-CIV-21884, 2016 WL 4543108 (S.D. Fla. Jan. 29, 2016)....................13

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977)..................................................... *passim*

*Johnson v. Goodyear Tire & Rubber Co.*,
   491 F.2d 1364 (5th Cir. 1974).................................................11, 12

*Jones v. DeSantis*,
   No. 19CV300, 2020 WL 5646124 (N.D. Fla. Apr. 7, 2020)...........................18

*Kolstad v. Am. Dental Ass'n*,
   527 U.S. 526, 538 (1999)..........................................................18

*Lonergan v. Fla. Dep't of Corr.*,
   623 F. App'x 990 (11th Cir. 2015)..................................................3

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012)......................................................21, 27

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*,
    No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021).........16

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*,
    481 F. Supp. 3d. 1258 (S.D. Fla. 2020)..........................................16

*Richardson v. Byrd*,
    709 F.2d 1016 (5th Cir. 1983)........................................................10

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
    211 F.3d 1228 (11th Cir. 2000)......................................................20

*Sagers v. Yellow Freight Sys., Inc.*
    529 F.2d 721 (5th Cir. 1976)..........................................................19

*Sos v. State Farm Mut. Auto. Ins. Co.*,
    No. 21-11769, 2023 WL 5608014 (11th Cir. Aug. 30, 2023).........13

*Thiessen v. Gen. Elec. Cap. Corp.*,
    267 F.3d 1095 (10th Cir. 2001)......................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................24, 25

*United States v. City of N.Y.*,
    276 F.R.D. 22 (E.D.N.Y. 2011) .....................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................*passim*

*Watson v. Fort Worth Bank & Tr.*,
    487 U.S. 977 (1988).......................................................................11

*Young v. United Parcel Serv., Inc.*,
    575 U.S. 206 (2015).........................................................................5

STATUTES

28 U.S.C. § 1291..................................................................................2

29 U.S.C. § 2611..................................................................................4

29 U.S.C. § 2612.................................................................................4

42 U.S.C. § 1981a...............................................................................21

Americans with Disabilities Act ("ADA") ................................2, 3, 4, 5

Family and Medical Leave Act ("FMLA") ...............................2, 4, 5, 6

Telephone Consumer Protection Act ("TCPA")..................................15

Title VII, 42 U.S.C. § 2000e-2 ........................................ 11, 12, 14, 15

**OTHER AUTHORITIES**

29 C.F.R. § 825.120..............................................................................6

29 C.F.R. § 825.308..............................................................................6

29 C.F.R. § 1630.2................................................................................3

U.S. Const. Am. VII .......................................................................21, 22

Fed. R. Civ. P. 23(a) ...............................................................23, 25, 26

Fed. R. Civ. P. 23(a)(2)........................................................................22

Fed. R. Civ. P. 23(b) ...........................................................................26

Fed. R. Civ. P. (b)(3) .....................................................................*passim*

Fed. R. Civ. P. (c)(3)............................................................................26

Fed. R. Civ. P. (c)(4).................................................................25, 26, 27

U.S. Equal Emp. Opportunity Comm'n, *Enforcement Guidance on Pregnancy Discrimination and Related Issues* (June 25, 2015).........................3

**INTRODUCTION**

The district court erred by conflating the standards governing adjudication of the liability and remedies stages of Plaintiffs' pattern-or-practice and disparate impact claims. In such cases, AT&T Mobility's liability turns on whether Plaintiffs can show that discrimination is the company's standard operating procedure because its nationwide attendance policy disadvantages pregnant workers *as a group*. Critically, that some pregnant workers at AT&T Mobility may never have incurred an unexcused absence because of pregnancy is irrelevant to whether the company is liable to the class. Rather, if Plaintiffs succeed in proving classwide liability, the case will then proceed to the second stage, where class members seeking relief each must show that they were harmed by the discriminatory policy. Accordingly, the district court erred when it concluded that liability to the class turned on whether individual class members were harmed by the attendance policy and, thus, that individual questions concerning remedies precluded predominance and superiority findings under Rule 23(b)(3). As a result, the ruling below denying class certification must be reversed.

Notwithstanding this fatal flaw, AT&T Mobility seeks affirmance by misrepresenting the facts about its disputed policy and misapprehending the applicable law. AT&T Mobility's account of the SAG policy is belied by the district court's factual findings, which were not clearly erroneous. And to the extent that

AT&T Mobility seeks to defend the lawfulness of its attendance policy, those contentions are properly raised at summary judgment, not class certification. AT&T Mobility's misrepresentations serve only to highlight that Plaintiffs have identified common questions about its nationwide attendance policy that are capable of classwide adjudication. No more is required.[1]

## ARGUMENT

### I. AT&T MOBILITY DISADVANTAGES PREGNANT WORKERS SEEKING EXCUSED ABSENCES.

By its plain terms and administration, the SAG policy subjects pregnant workers to greater exposure to discipline for absences related to pregnancy than other workers with short-term absences. While the policy enumerates thirteen categories of excused absence, pregnancy is not among them. Instead, a pregnant worker hoping to avoid penalty for an unexcused absence must qualify for other statutory schemes, each with their own eligibility thresholds (Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA")) or qualify for a company-created exemption that excludes the intermittent absences typically needed by pregnant workers (Short Term Disability). For those pregnant workers who do qualify for intermittent leave under the ADA or the FMLA, AT&T Mobility imposes

---

[1] For the reasons detailed in Appellant's Opening Brief (ECF No. 24) and Appellant's Response to Jurisdictional Questions (ECF No. 23), this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

onerous procedures not required of workers covered by many of the other enumerated leave categories. For the rest, AT&T Mobility's policy leaves them without *any* ability to avoid being penalized for pregnancy-related absences.

A. Under the SAG Policy, Pregnant Workers Who Need Intermittent Leave Are Disadvantaged.

One of AT&T Mobility's baldest distortions is its contention that the SAG policy treats a pregnant worker who needs intermittent excused time off no worse than a worker with cancer or multiple sclerosis who needs the same benefit. Defs' Br. 7. But this comparison actually *exposes* the SAG policy's disparate treatment of pregnancy:

- A worker undergoing cancer treatment qualifies as having a "disability" under the ADA. *See* 29 C.F.R. § 1630.2(j)(3)(iii); *Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 993 (11th Cir. 2015). So does a worker with multiple sclerosis. 29 C.F.R. § 1630.2(j)(3)(iii). A pregnant worker ordinarily does not.[2]

- Because they are covered by the ADA, an AT&T Mobility worker with cancer or multiple sclerosis who experiences nausea due to chemotherapy, or who needs to attend a doctor's appointment, is eligible for intermittent absences to

---

[2] *See* U.S. Equal Emp. Opportunity Comm'n, *Enforcement Guidance on Pregnancy Discrimination and Related Issues* (June 25, 2015), https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#II ("[P]regnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability." (citations omitted)). Moreover, although some pregnancy-related complications may be ADA-qualifying if severe enough, neither AT&T Mobility's written policy nor training mention this potential route to excused absence, Pls' App'x 442-43, 453-58, 869 n. 27.

be excused from day one of employment with AT&T Mobility. The pregnant worker with "morning sickness," or who needs to see their obstetrician, is not.

- In fact, the pregnant worker is disadvantaged compared to *all of the other workers* under the SAG policy because the enumerated categories of excused absence—jury duty, bereavement leave, union activities, and so on—each applies from day one of AT&T Mobility employment.

The pregnant worker cannot avoid penalty for intermittent absences unless she is covered by the FMLA, which requires that she has been employed by AT&T Mobility (a) full-time, (b) for at least one year, and (c) has not exhausted her FMLA leave for another qualifying reason, such as to care for a seriously ill family member. 29 U.S.C. §§ 2611(2), 2612(a)(1).

AT&T Mobility's contention that a pregnant worker who is ineligible for leave under either the ADA or FMLA but needs intermittent time off could receive an "Approved Job Accommodation" is contradicted by the record. The company's designee confirmed that this SAG category refers to "*ADA-related* job accommodations." Pls' App'x 363 (emphasis added). Indeed, when a worker applies for a "job accommodation," they receive a letter stating that "an *ADA* Job Accommodation only applies . . . if [your] condition prevents you from performing your job's essential functions without the accommodation." Defs' App'x 575 (emphasis added). They are also directed to have their medical provider complete an

4

"AT&T *ADA* Accommodation Medical Evaluation," Defs' App'x 574 (emphasis added).[3]

B. Under the SAG Policy, Pregnant Workers Must Overcome Procedural Hurdles Not Imposed on Their Non-Pregnant Peers.

Even those pregnant workers who can shoehorn themselves into an excused absence category face procedural hurdles not faced by others. *See* Pls' App'x 451-58. One of the most glaring examples is AT&T Mobility's procedures governing FMLA coverage. AT&T Mobility admits that when it comes to pregnant workers, the company demands medical re-certification to justify each intermittent absence. *See* Defs' Br. 10-11 (describing "steps" the company demands of pregnant workers when absent, including medical "Certification," plus "additional necessary information" if AT&T Mobility decides first submission is "insufficient"); *see also id.* at 11 (detailing repeated demands for certification from Plaintiffs Allen and Webb). Yet FMLA regulations *expressly prohibit* employers from requiring repeat

---

[3]    AT&T Mobility further attempts to disguise the SAG policy's disadvantaging of pregnancy by focusing on how pregnant and non-pregnant workers are treated *within* each of the thirteen SAG categories. Defs' Br. 6-7, 9-14. But the fact that a pregnant person is able to take time off for jury duty, bereavement leave, union activities, and so on is irrelevant; the question is how absences caused by *pregnancy* are treated vis-a-vis other absences. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015). And while AT&T Mobility attempts to inject yet another factual dispute about the SAG policy's operation by downplaying the Centralized Attendance Group's animating purpose—i.e., to assure uniform, indeed "*centralized*," application of the SAG policy—the district court found otherwise, Pls' App'x 1172, and those findings were not clearly erroneous.

5

certification for intermittent absences arising from the same condition. *See* 29 C.F.R. § 825.308 (single medical certification of serious health condition suffices for six months); 29 C.F.R. § 825.120(b) (applying this rule to pregnancy); 29 C.F.R. § 825.120(a)(4) (recognizing entitlement to intermittent leave for pregnancy-related conditions that do not result in treatment by a health care provider, such as morning sickness). And in contrast to its treatment of pregnant workers, AT&T Mobility's corporate designee admitted that the company does not require re-certification for others seeking FMLA intermittent leave. *See* Pls' App'x 584-87 (explaining that workers absent due to other FMLA-qualifying conditions "don't have to go through the whole process of getting all their paperwork approved again. It's already approved").[4]

AT&T Mobility may dispute that it imposes disparate FMLA procedures on pregnant workers as a group—a contention belied by the statistical evidence, as discussed further, below—but this, again, is a common question for classwide resolution.

---

[4] Incredibly, AT&T Mobility brags that because it does not demand re-certification for pregnancy-related absences under four hours, it treats pregnant workers *better* than their non-pregnant peers. Defs' Br. 11. As detailed above, such a policy still does not comply with the FMLA. In any event, Plaintiffs dispute that the single document AT&T Mobility selects as evidence of this purported policy is proof of its existence. *Compare* Defs' Br. 11 *with* Pls' Br. 13.

C. Application of the SAG Policy Leads to Pregnant Workers Incurring More Unexcused Absences and Escalating Discipline.

Dr. Madden's analysis shows that AT&T Mobility denies excused absences to pregnant workers significantly more often than it denies excused absences to their non-pregnant peers: over half of excused absence requests by pregnant workers were denied as compared to just over a third of requests by non-pregnant workers. That disparity is statistically significant to *120 standard deviations*. In other words, "[t]he odds that this difference in whether a worker is denied a requested excuse of absence could have occurred by chance, were pregnancy not a factor, are much smaller than one in a billion." Pls' App'x 904-05.

Unsurprisingly, given sharply disparate rates of excused absences, pregnant workers also are more likely to receive attendance-based discipline than non-pregnant workers, also at highly statistically significant levels. Pls' App'x 922-28, 956. And, under AT&T Mobility's discipline policy, Pls' App'x 600-07, discipline is closely associated with diminished promotion and transfer opportunities.

D. Ms. Curlee's Experience Exemplifies the SAG Policy's Adverse Application to Pregnant Workers and Shows Why It May Appropriately Be Adjudicated on a Classwide Basis.

Plaintiff-Intervenor Amanda Curlee's experience illustrates the many deficiencies in AT&T Mobility's application of the SAG policy to pregnant workers. Ms. Curlee suffered pregnancy complications, including high blood pressure and whole-body swelling (symptoms of preeclampsia), preterm labor, and abdominal

discomfort from hormonal changes impacting her gallbladder. Pls' App'x 1231. These conditions caused Ms. Curlee to intermittently miss work throughout her pregnancy. Pls' App'x 1232. Although AT&T Mobility knew about many of these conditions, Ms. Curlee was never told that she could receive a job accommodation or how to request one. Pls' App'x 1232-33. She also faced repeated demands for medical certifications. Pls' App'x 1236. Far from accommodating her, AT&T Mobility punished Ms. Curlee with seven attendance points during her pregnancy— including for leaving work early to go to the emergency room. Pls' App'x 1234-35. As a result, she was denied at least two promotions and ultimately she was constructively discharged. Pls' App'x 1234, 1236. Ms. Curlee's experience was not anomalous; it is the predictable and typical result of AT&T Mobility's SAG policy.

In sum, AT&T Mobility disadvantages pregnant workers in the SAG's terms and implementation. The company's efforts to dispute those realities and mischaracterize the SAG policy merely underscore the existence of common questions that can provide common answers about the policy's terms and application to pregnant workers that can, and should, be adjudicated on behalf of the proposed class.

## II.    AT&T MOBILITY, LIKE THE DISTRICT COURT, MISAPPREHENDS THE LEGAL STANDARDS APPLICABLE TO PATTERN-OR-PRACTICE AND DISPARATE IMPACT CLAIMS.

Identifying common questions and determining whether those questions predominate "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). AT&T Mobility, making the same error that the district court did in its Rule 23(b)(3) analysis, fundamentally misunderstands what a plaintiff must prove at the liability stage of a pattern-or-practice and disparate impact class action. These cases routinely proceed as class actions precisely because they target systemic, company-wide practices rather than any single instance of discrimination. Once the correct legal standards are applied, AT&T Mobility's arguments—and the district court's conclusions—on commonality, predominance, and superiority fall apart.

### A. Pattern-or-Practice Claims Do Not Require Individual Liability Determinations.

An employer is liable for discrimination to a class of workers if "'discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 n.7 (2011) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). To make this showing, the plaintiff "is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's

9

discriminatory policy." *Teamsters*, 431 U.S. at 360.[5] Rather, the plaintiff's only burden to prove liability is "to establish a prima facie case that such a policy existed." *Id.* If the plaintiff succeeds, then "that showing will support a rebuttable inference that all class members were victims of the discriminatory practice, and will justify 'an award of prospective relief,' such as 'an injunctive order against continuation of the discriminatory practice.'" *Dukes*, 564 U.S. at 352 n.7 (quoting *Teamsters*, 431 U.S. at 361). At no point during this determination does the plaintiff need to present individualized evidence that each putative class member was harmed by the discriminatory policy.

It is only after pattern-or-practice liability is established that "additional proceedings are ordinarily required to determine the scope of individual relief for the members of the class." *Cooper*, 467 U.S. at 876; *see also Teamsters,* 431 U.S. at 361 ("[T]he question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination."). The procedures during this second phase, the "relief phase," "are calculated to identify the individual claimant's relationship to the condemned practices without a second trial of the issue of class discrimination." *Richardson v. Byrd*, 709 F.2d 1016, 1021

---

[5] While *Teamsters* established the paradigm for adjudicating pattern-or-practice cases brought by the United States, it has been readily applied to private class actions. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 876 n.9 (1984).

(5th Cir. 1983). Whether and to what extent individual class members were harmed by a defendant's discriminatory policy—in this case, whether a given class member sought an excused absence and was denied—is not related to the defendant's liability to the class and thus should not preclude class certification.

>  B.  Disparate Impact Claims Do Not Require Individual Liability Determinations.

Disparate impact claims are, by their nature, group claims. A Title VII disparate impact violation "may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular *group.*" *Teamsters*, 431 U.S. at 349 (emphasis added). Like pattern-or-practice claims, "[t]he evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 987 (1988). Again, at no point must the plaintiff present evidence that each putative class member was harmed by the discriminatory policy to establish liability.

As in the pattern-or-practice context, individualized inquiries in disparate impact cases bear on *remedies*, not liability. *See In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1315 (11th Cir. 1999). If the plaintiff proves that an employer's policy has a disparate impact, then each putative class member is "presumptively entitled" to an award of damages. *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1374 (5th Cir. 1974). An individual class member

showing that she "was within the class of persons negatively impacted by the unlawful employment practice" is sufficient to show entitlement to damages if the employer has "an opportunity to demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the individual plaintiff would not have been awarded the job or job benefit at issue anyway." *In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d at 1315; *Johnson*, 491 F.2d at 1374 (holding that employer may rebut presumption of entitlement to relief by showing that the discriminatory policy "did not adversely affect a particular claimant"); *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151-52 (2d Cir. 2012). Because these individualized issues are purely remedies questions in disparate impact cases, they should not warrant denial of class certification. *See* Section III.A, *infra*.

## III.    HAVING MISSTATED TITLE VII CLASSWIDE LIABILITY STANDARDS, AT&T MOBILITY, LIKE THE DISTRICT COURT, THEN MISAPPLIES THEM TO ITS PREDOMINANCE AND SUPERIORITY ANALYSES.

By misrepresenting the elements for establishing liability, AT&T Mobility's arguments mirror some of the fundamental legal errors that infect the district court's predominance and superiority findings. The potential individualized questions the district court identified are not relevant to the liability question in this case: whether AT&T Mobility has a *policy* that discriminates against pregnant workers *as a group*. And by failing to correctly analyze Plaintiffs' legal theories, the district court

12

departed from well-established precedent defining the process for managing and trying class discrimination claims.

## A. Individual Remedies Questions Do Not Predominate Over Common Liability Questions.

AT&T Mobility does not dispute "that individualized damages do not preclude a class action." Defs' Br. 26. AT&T Mobility was wise not to repeat this error by the district court, as it is the longstanding, and recently reaffirmed, precedent that "individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member," *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *16 (11th Cir. Aug. 30, 2023) (citation omitted); *see* Pls' Br. 29-34; *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1240-41 (11th Cir. 2016) (citations omitted) (same as to affirmative defenses).

## B. To Defeat Predominance, AT&T Mobility, Like the District Court, Erroneously Treats Remedies Questions as if They Were Liability Questions.

### 1. AT&T Mobility Ignores the Liability Requirements for Pattern-or-Practice and Disparate Impact Claims.

AT&T Mobility's central assertion on appeal is that the individual questions the district court erroneously cited in its predominance analysis bear on *liability* rather than on *remedies*. *See* Defs' Br. 26. But predominance, like commonality, can only be properly assessed in context of the "elements of the underlying cause of action." *Erica P. John Fund*, 563 U.S. at 809; *see also Harris v. Nortek Global*

13

*HVAC LLC*, No. 14-CIV-21884, 2016 WL 4543108, at \*12 (S.D. Fla. Jan. 29, 2016). In making this argument, *none* of the predominance cases AT&T Mobility cites is even an employment case, much less a pattern-or-practice or disparate impact case. *See* Defs' Br. 24-26. As explained above, decades of Title VII class action case law contradicts AT&T Mobility's argument and makes clear the district court committed legal error in finding that predominance was not satisfied. *See* Section II, *supra*.

AT&T Mobility's predominance argument revolves around a statement of law that it cherry-picks from a breach of contract case. *See* Defs' Br. 24 ("Where determination of class-wide liability 'requires a finding that *each* putative class member suffered harm traceable to the defendant, those individualized inquiries necessarily predominate any common questions." (quoting *Baker v. State Farm Mut. Auto. Ins. Co.*, No. 21-14197, 2022 WL 3452469, at \*4 (11th Cir. 2022))). AT&T Mobility's selective citation to *Baker* ignores that the Georgia state law claims at issue in that case turned on whether the plaintiff policyholders received smaller payments than what its insurance contract provided. *Baker*, 2022 WL 3452469, at \*4. In other words, unlike in a Title VII pattern-or-practice or disparate impact case, in *Baker* each class member's financial loss was a necessary element for liability.

In contrast, classwide liability in systemic discrimination cases is *not* dependent on individualized findings of harm. *See, e.g.*, *Teamsters*, 431 U.S. at 336; Section II, *supra*. Indeed, if AT&T Mobility were correct, then no disparate impact

or pattern-or-practice actions would ever be certified. The fact that such cases are routinely certified belies AT&T Mobility's incorrect statement of the law.[6] And, unlike in *Baker*, the district court here found that Plaintiffs' expert "uses evidence common to the class to demonstrate that the effects of the SAG policy can be evaluated class-wide." *Compare* Pls' App'x 1172 *with Baker v. State Farm Mut. Auto. Ins. Co.*, No. 4:19-CV-14, 2021 WL 4006124, at *7 (M.D. Ga. Sept. 2, 2021).

Similarly, AT&T Mobility's reliance on *Cordoba v. DIRECTV, LLC* is misplaced because that holding concerns only the elements required for *standing* under the Telephone Consumer Protection Act ("TCPA"), not Title VII. 942 F.3d 1259, 1267 (11th Cir. 2019). Moreover, *Cordoba* holds that individualized issues predominate in TCPA actions only "when it appears that a *large portion* of the class does not have standing." *Id.* at 1277 (emphasis added). In *Cordoba*, only 5.5 percent of the 16,870 putative class members had asked the defendant not to call them, an essential element of liability under the TCPA. By contrast, it is undisputed here that

---

[6] Indeed, courts routinely award equitable relief, such as injunctive or declaratory relief, without *ever* looking to the individual circumstances of class members. *See, e.g.*, *Cooper*, 467 U.S. at 876 ("[A] finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class."); *Dukes*, 564 U.S. at 352 n.7 (a showing that discrimination was the employer's "standard operating procedure" will "justify 'an award of prospective relief,' such as 'an injuncti[on]'" (quoting *Teamsters*, 431 U.S. at 361)). These cases make clear that Title VII liability attaches to the *employer*'s discriminatory conduct, not the individual circumstances of class members.

AT&T Mobility's SAG policy applied to *all* putative class members, and Dr. Madden's analysis confirms that pregnant workers were given unexcused absences in significant numbers. If Plaintiffs are able to prove that the SAG policy is discriminatory, then class members are entitled to (a) classwide equitable relief, and (b) a rebuttable presumption that they were individually harmed by the policy. *See Dukes*, 564 U.S. at 352 n.7.[7]

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, on which AT&T Mobility also relies, has no bearing on this case. There, the court's predominance finding rested on the elements required to prove a products liability claim. No. 20-13588, 2021 WL 4427772, at *2 (11th Cir. Sept. 27, 2021). Predominance was not met because the plaintiffs had "offered no common evidence capable of showing a uniform classwide defect at the time of sale," *id.*, which was fatal to showing "class-wide evidence of a deceptive act." *Ohio State Troopers*

---

[7] To the extent that AT&T Mobility relies on *Cordoba* to imply (incorrectly) that the class definition includes absent class members who were not harmed by the policy, that argument should also be disregarded because AT&T Mobility failed to preserve the issue for appeal, *see* Pls' App'x 364, and thus should be foreclosed from asserting it here for the first time. *See Van Der Meulen v. Brinker Int'l*, 153 F. App'x 649, 654-55 (11th Cir. 2005). In any event, that a class may contain some uninjured individuals does not bar certification, especially when a bifurcated process would ensure only those harmed receive remedies. *See Tyson Foods*, 577 U.S. at 463-64 (Roberts, J., concurring) (class action was allowable even though "hundreds of class members suffered no injury," if district court could "fashion a means of identifying those class members not entitled to damages").

*Ass'n, Inc. v. Point Blank Enters., Inc.*, 481 F. Supp. 3d. 1258, 1283 (S.D. Fla. 2020). This fact- and claim-specific holding is irrelevant here.

> 2.  <u>The Individualized Questions AT&T Mobility and the District Court Identify Do Not Bear on Liability in Pattern-or-Practice or Disparate Impact Cases.</u>

None of the individualized questions AT&T Mobility and the district court identify goes to liability. Individual class members' circumstances—such as whether they were absent from work because of pregnancy—may disqualify them from relief at stage two, but are irrelevant to classwide liability, or even to classwide injunctive and declaratory relief. *See, e.g.*, *Cooper*, 467 U.S. at 876. Indeed, AT&T Mobility's "examples" of individualized issues confirm that they bear on remedies, not liability to the class. For instance, AT&T Mobility claims that "[i]f a class member fails to prove that an absence for which AT&T denied excuses was pregnancy-related, she loses." Defs' Br. 27. While this may be true for an *individual* disparate treatment claim, systemic claims operate differently. AT&T Mobility can still be found liable for Title VII disparate impact and/or pattern-or-practice discrimination, even if it can demonstrate that absences for which individual class members seek damages were unrelated to pregnancy. *See Teamsters*, 431 U.S. at 362; *In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d at 1315.

In assessing awards of the monetary relief Plaintiffs seek, these kinds of individualized questions are present in nearly *every* class action certified under Rule

17

23(b)(3). *See Jones v. DeSantis*, No. 19CV300, 2020 WL 5646124, at *4 (N.D. Fla. Apr. 7, 2020) ("[N]early all class actions involve at least some individual questions, including, for example, whether an individual class member qualifies for whatever classwide relief may ultimately be granted."); *see also Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96 CV 8414, 2013 WL 4647190, at *10-11 (S.D.N.Y. Aug. 29, 2013) (certifying 23(b)(3) class even though "the remedial phase of this litigation necessarily involves some individualized issues," such as whether an individual claimant "suffered an adverse employment action as a result of [the discriminatory policy]").

Here, the only monetary relief Plaintiffs seek—back pay and punitive damages—is particularly susceptible to classwide adjudication. Awards of back pay are typically more easily formulated than most forms of compensatory damages and here can be calculated, at least in part, based on AT&T Mobility's own workforce data. *See* Pls' Br. 40-41. And because an award of punitive damages relies on the defendant's conduct, not the plaintiffs' individual circumstances, it will be based on evidence common to the class. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999).

C. <u>A Class Action Is Superior to Hundreds of Individual Lawsuits Bringing Pattern-or-Practice and Disparate Impact Claims.</u>

When the correct legal standards are applied to the predominance inquiry, the manageability concerns underlying the district court's superiority analysis, and

AT&T's contentions here, fall apart. Because individualized inquiries are *not* required to establish disparate impact or pattern-or-practice liability, it was legal error for the district court to find Plaintiffs failed to establish superiority on grounds that there would be a "multitude of fact-specific inquir[i]es needed to resolve each putative class member's claims of discrimination." Pls' App'x 1185.

As detailed *supra*, individualized inquiries matter only during the remedies phase. "At this phase, the burden of proof will shift to the company," which "will have the right to raise any individual affirmative defenses it may have." *Dukes*, 564 U.S. at 366-67 (citing *Teamsters*, 431 U.S. at 362). The district court erred when it failed to acknowledge that the Supreme Court's bifurcated *Teamsters* model is a well-established and commonly used framework, specifically crafted for systemic discrimination cases like this one. *See Teamsters*, 431 U.S. at 360-61. Ignoring this critical precedent, the district court committed legal error in concluding that the *Teamsters* approach would be inefficient, confusing, and would even "vitiate the underlying policies of Rule 23(b)(3)." Pls' App'x 1185. That conclusion contradicts longstanding precedent properly applying the *Teamsters* model to systemic discrimination class actions. *See, e.g.*, *Sagers v. Yellow Freight Sys., Inc.*, 529 F.2d 721 (5th Cir. 1976) ("Title VII litigation is frequently conducted through a bifurcated proceeding. During the first stage, general liability for discrimination against the class may be adjudicated; if such liability is found, a second proceeding is held

during which the specific relief due individual class members is determined and awarded."); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1237 (11th Cir. 2000) ("It is clear that *Teamsters* applies in private class actions alleging systemic disparate treatment in employment."); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1107 (10th Cir. 2001) (finding district court erred when it "failed to acknowledge that plaintiffs' proposed trial plan . . . was consistent with the framework outlined in *Teamsters* for pattern-or-practice claims"); *In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d at 1315-16; *Chin*, 685 F.3d at 151-52.

That some individualized determinations will be required at the remedies phase cannot, by itself, defeat superiority. For the superiority analysis, "the proper comparison is not between class litigation and no litigation at all, but between class litigation and actions conducted separately by individual class members." *United States v. City of N.Y.*, 276 F.R.D. 22, 48-49 (E.D.N.Y. 2011); *see Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). If each class member were required to bring separate disparate impact and pattern-or-practice claims, every case would require re-litigating the fundamental liability questions: namely, (1) whether AT&T Mobility's application of the SAG policy constitutes a pattern-or-practice of discrimination and (2) whether the SAG policy has a disparate impact on pregnant workers that is not justified by business necessity. Requiring hundreds of employees

to make these showings "would invite the repeated litigation of the pattern and practice issue, with lamentable consequences for judicial economy and the finality and consistency of judgments." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir. 1986).[8] AT&T Mobility is therefore incorrect that hundreds of individual lawsuits would be just as efficient as a class action.

AT&T Mobility's Seventh Amendment concerns are also specious. As a threshold matter, the only remedy-stage jury question would be the amount of punitive damages awarded on the disparate treatment claim[9]—a question that could be resolved by the same jury that decides whether such a sanction is warranted. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1184 (11th Cir. 2010) ("Backpay in this Circuit is considered equitable relief . . . [and] therefore entails no rights under the [S]eventh [A]mendment." (internal quotation marks omitted)); *EEOC v. W&O, Inc.*, 213 F.3d 600, 615-16 (11th Cir. 2000) (punitive damages may be calculated in proportion to amount of back pay awarded); *see also EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 801-03 (5th Cir. 2016) ("[R]outine use of the tools

---

[8] *See also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (finding that, even though "hundreds of separate trials may be necessary to determine which class members were actually adversely affected," a class action was still superior because "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful").

[9] No remedies-phase jury questions would exist for the disparate impact claim, as punitive damages are unavailable. *See* 42 U.S.C. § 1981a(a)(1).

afforded by the Federal Rules of Civil Procedure provide practical answers to [the] suggestion that . . . bifurcation . . . may offend the Seventh Amendment."). Thus, the district court's conclusion that superiority was not met was an error of law.

## IV. THE DISTRICT COURT CORRECTLY FOUND PLAINTIFFS SATISFIED THE COMMONALITY REQUIREMENT.

To satisfy commonality under Rule 23(a)(2), Plaintiffs' claims "must depend upon a common contention" that is "capable of classwide resolution." *Dukes*, 564 U.S. at 350. The central inquiry is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotations omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id*. at 359 (internal quotations omitted).

Disputes about the terms of AT&T Mobility's SAG policy are common to the class because the SAG policy applies to all putative class members. AT&T Mobility does not actually dispute that the SAG policy is, as the district court found, a "uniform, discretion-free policy" that applies across the entire class. Pls' App'x 1172. The district court correctly identified the policy as satisfying commonality because it provides the "glue holding the alleged *reasons* for all those [employment] decisions together" and answers the central question: "*why was I disfavored.*" *Dukes*, 564 U.S. at 352. This was not a misinterpretation of *Dukes*, as AT&T Mobility claims, but an application of its central holding. *See Cox*, 784 F.2d at 1557

("[A]llegations of similar discriminatory employment practices . . . satisfy the commonality and typicality requirements of Rule 23(a).").

Moreover, as the district court properly recognized, answers to questions about the SAG policy's terms, operation, and effects are central to every class member's claim for pattern-or-practice and disparate impact liability. *See* Pls' Br. 22-27 (listing commonality findings).

AT&T Mobility attacks two of these common questions, claiming that they are not "susceptible to common answers." Defs' Br. 22. But as the district court found, precisely the opposite is true.

As to the common question of whether the SAG policy constitutes a pattern or practice of discrimination by disadvantaging pregnant employees as compared with non-pregnant peers, Defs' Br. 22, whichever answer the factfinder delivers, it will be common to the entire class. For instance, a finding that the SAG policy treats pregnant workers worse than others would establish a prima facie case for *every* class member's pattern-or-practice claim. If, instead, the factfinder finds that pregnant workers are not treated worse than others under the SAG policy, *every* class member's pattern-or-practice claim will fail. In other words, these are quintessential common questions because "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 (internal quotations omitted)

The common question of whether AT&T Mobility's SAG policy has a disparate impact on pregnant workers also fits squarely within *Dukes*'s definition of a common question. *See Fla. Educ. Ass'n v. Dep't of Educ.*, No. 17CV414, 2019 WL 8219403, at *3 (N.D. Fla. Jan. 3, 2019) ("Whether the [challenged policy] has a disparate impact . . . is a common question—the answer will be the same for every class member.").

AT&T Mobility's conclusory statement that Plaintiffs have presented "no evidence suggesting that AT&T Mobility treated non-pregnant employees any differently" is belied by the corporate documents, testimony, and statistical evidence detailed in Appellant's opening brief and described above. *See* Pls' Br. 7-13; Section I, *supra*. In particular, the district court properly found that Dr. Madden's expert analysis "uses evidence common to the class to demonstrate that the effects of the SAG policy can be evaluated class-wide." Pls' App'x 1172. As discussed above, this evidence directly answers the central liability questions by demonstrating that the SAG policy results in discriminatory outcomes for pregnant workers. *See* Section I.C, *supra*.

In any event, the substance of AT&T Mobility's disagreement with Dr. Madden's analysis is irrelevant at the class certification stage. "Reasonable minds may differ" as to the weight of Dr. Madden's testimony, but "its persuasiveness is, in general, a matter for the jury." *Tyson Foods*, 577 U.S. at 459. In fact, the parties'

dispute over what the data shows "is itself common to the claims made by all class members," and is therefore a reason to *certify* the class, not a reason to deny certification. *Id.* at 457.[10] Requiring plaintiffs to present anything more would improperly turn class certification into a summary judgment proceeding.[11]

## V.    AT&T MOBILITY, LIKE THE DISTRICT COURT, MISCHARACTERIZES THE RELEVANT STANDARDS UNDER RULE 23(C)(4) AND THE ISSUE CLASSES APPELLANT SEEKS AS ALTERNATIVE GROUNDS FOR CERTIFICATION.

Certification of an issue class is appropriate when the issue class—not the cause of action as a whole—meets the predominance and superiority requirements of Rule 23(b)(3). 2 Newberg and Rubenstein on Class Actions § 4:92 (6th ed.)

---

[10] *See Hnot v. Willis Grp. Holdings Ltd.*, 241 F.R.D. 204, 210 (S.D.N.Y. 2007) ("[E]xperts' disagreement on the merits—whether a discriminatory impact [can] be shown—is not a valid basis for denying class certification.") (internal quotations omitted).

[11] Although AT&T Mobility raises no challenge to the remaining Rule 23(a) requirements, they are also satisfied. As the district court correctly found, numerosity is easily met because the proposed class includes at least 2,168 women. Pls' App'x 1169. Next, the district court properly concluded that typicality is satisfied because the claims of Plaintiffs Webb and Allen are based on the "same course of conduct underlying the class claims," namely "AT&T's attendance policy." *Id.* at 1177. For these same reasons, Appellant Curlee's claims are also typical of the class claims, as the district court found in its order granting Ms. Curlee's motion to intervene. Pls' App'x 1255-56. Thus, there is a "sufficient nexus" between Ms. Curlee's claims "and those of the individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citation omitted). Last, adequacy is satisfied because there are no "substantial conflicts of interest" between Ms. Curlee and the class, and she "will adequately prosecute the action" for purposes of this appeal. *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 535 (11th Cir. 2017) (citation omitted).

("[T]he proponent of an issue class . . . must demonstrate that the proposed issue class meets all of the requirements of Rule 23(a) and fits into one of the categories of Rule 23(b); however, the class proponent need only make that showing *with regard to the issue proposed for certification*." (footnotes omitted)).[12]

AT&T Mobility contends that issue class certification is nonetheless out of bounds because the three issue classes that Plaintiffs proposed are not, in its view, "narrower than the cause of action as a whole." Defs' Br. 31. Not so. Plaintiffs proposed three questions for potential issue certification: (1) whether AT&T Mobility is liable for pattern-or-practice or disparate impact discrimination and, if so, (2) whether injunctive relief is available and/or (3) whether punitive damages are appropriate. *See* Pls' App'x 481. This approach is substantially narrower than the proposed Rule 23(b)(3) class because it would not resolve individual class members' entitlement to monetary relief. *See, e.g.*, *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (explaining when class is certified under Rule 23(c)(4) "[c]lass members would receive the benefit of a declaratory judgment (if the class prevails) on the

---

[12] AT&T Mobility points to two district court cases that take a contrary view and would demand that plaintiffs meet all of the requirements of Rule 23(c)(3) for the cause of action as a whole in order to have an issue class certified under Rule 23(c)(4). This approach has been rejected by the majority of courts, and for good reason: it would render (c)(4) duplicative of (c)(3), contrary to the plain text and intent of the rule. This Court should likewise refuse to adopt it.

issue but would need to proceed in individual suits to seek damages; by contrast, if the class loses, every detainee would be bound through the doctrine of issue preclusion"); *see also* Fed. R. Civ. P. 23(c)(4) advisory committee's note to 1966 amendment; *McReynolds*, 672 F.3d at 490-91.

By excising the question of individualized monetary relief, issue class certification would have allowed the district court to *avoid* the problems it identified in its predominance and superiority analysis altogether, and it was error for the court to conclude that those same concerns precluded certification of any issue class.

## CONCLUSION

Based on the foregoing, the Court should (1) reverse the district court's denial of class certification of Plaintiffs' pattern-or-practice and disparate impact claims; and (2) remand for further proceedings consistent with the Court's ruling.

Date: October 20, 2023

*s/ Joseph M. Sellers*
Joseph M. Sellers
Harini Srinivasan
Phoebe Wolfe
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., N.W.
Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600

Gillian L. Thomas
Jennesa Calvo-Friedman
Ria Tabacco Mar
American Civil Liberties Union
Foundation

27

125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500

Cory Isaacson
Andres M. Lopez-Delgado
American Civil Liberties Foundation
of Georgia, Inc.
1100 Spring St., N.W., Suite 640
Atlanta, GA 30357
Tel.: (404) 594-2723

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitations under Rule 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure and 11th Circuit Rule 32-4 because it contains 6,496 words, excluding the parts of the brief exempted by Rule 32(f). I also certify that this brief complies with the applicable typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

Dated: October 20, 2023                                   *s/Joseph M. Sellers*
                                                                                 Joseph M. Sellers

                                                                                 *Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this document with the Clerk of the Court using the ECF system on October 20, 2023, which will automatically generate and serve by e-mail a Notice of Docket Activity on Attorney Filers under Rule 25(c)(2) of the Federal Rules of Appellate Procedure. Pursuant to 11th Circuit Rule 31-3, four copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for second-day delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, GA 30303


Dated: October 20, 2023                    *s/Joseph M. Sellers*
                                           Joseph M. Sellers

                                           *Counsel for Appellant*